UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

    WAYNE FRAZIER,                                                  Case No. 09-20032-dob
                                                                           Chapter 7 Proceeding
              Debtor.                                                  Hon. Daniel S. Opperman
_____/
HOWARD AND JEAN MILLER,

    Plaintiffs,

v.                                                                                   Adversary Proceeding
                                                                                   Case No. 09-2183-dob

WAYNE FRAZIER,

    Defendant.
_____/
WAYNE FRAZIER,

    Counter-Claimant,

v.

HOWARD AND JEAN MILLER,

    Counter-Defendants.
_____/

<u>OPINION REGARDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

<u>Introduction</u>

Plaintiffs seek summary judgment on their amended three count complaint to determine the non-dischargeability of a debt under 11 U.S.C. §§ 523(a)(4), § 523(a)(6), and (a)(2)(A). Plaintiffs contend that they are entitled to summary judgment based on collateral estoppel principles because the Michigan Court of Appeals affirmed the trial court's bench decision in their state court civil action against Defendant, which prevents Defendant from re-litigating the

identical issues in the adversary proceeding before this Court that were fully litigated in their state court action. Defendant disagrees.

## Facts

Plaintiffs and Defendant formed J & W Transportation, LLC ("J&W") in August 2001. J&W was engaged in the trucking business. Howard Miller possessed a 25% interest, Jean Miller possessed a 25% interest, and Defendant held a 50% interest in J&W. In 2005, Defendant also formed and operated his own trucking company, WL Frazier Trucking, LLC ("WL Frazier"). Eventually a dispute arose between the parties about the use of J&W's trucks by Defendant as well as the operations of J&W and various financing agreements between Plaintiffs, J&W, and Defendant.

On July 26, 2007, Plaintiffs and J&W commenced a lawsuit against Defendant and WL Frazier. In this state court civil action, the complaint against Defendant and WL Frazier stated six counts: claim and delivery (Count I), fraud and misrepresentation (Count II), breach of fiduciary duty (Count III), unjust enrichment (Count IV), conversion (Count V), and breach of contract (Count VI). After a three day bench trial in July 2008, the trial court issued a bench opinion finding against Defendant and WL Frazier. Damages were awarded on each count as follows.

- Count I - Claim and Delivery:

Plaintiffs and J&W sought the return of the 12 trucks owned by J&W that were being used by Defendant in his trucking business, WL Frazier. Ten of the 12 trucks were repossessed and sold for $80,000. One of the trucks was scrapped and then sold because it was inoperable. The remaining truck, designated as Truck 4234 in the state court opinion, was ordered to be returned pursuant to a restraining order entered by the court on October 15, 2007. Truck 4234 was not returned by Defendant; rather, Defendant continued to use this truck.

2

The trial court determined that J&W was entitled to possess Truck 4234 and ordered it to be returned to J&W. In addition, Plaintiffs and J&W requested that the state court find Defendant in contempt for his failure to comply with the restraining order and requested an award of costs. The trial court found Defendant and WL Frazier in contempt and ordered Defendant "to pay Plaintiffs $7,500 to compensate for a portion of the profits made when Defendant was wrongfully using Truck 4234." At a subsequent hearing, the trial court concluded that it erred in awarding the $7,500 in contempt damages to Plaintiffs because such contempt damages were owed to the trial court instead. The trial court reserved the remaining allegations of lost profits to be determined under Plaintiffs' & J&W's unjust enrichment count. In addition, the trial court required Defendant and WL Frazier "to reimburse Plaintiffs for the costs of having to seize [T]ruck 4234" as permitted by Michigan Court Rule 3.105(J).

- Count II - Fraud and Misrepresentation:

The trial court initially stated the applicable law as follows:

> "Michigan Civil Jury Instruction 128.01 sets forth the elements that Plaintiffs must prove in order to have a valid fraud and misrepresentation claim. Plaintiffs must show by clear and convincing evidence that: (1) Defendant made a representation of material fact or facts; (2) the representation was false when it was made; (3) Defendant knew the representation was false when he made it, or Defendant made it recklessly, that is, without knowing whether it was true; (4) Defendant made the representation with the intent that Plaintiffs would rely on it; (5) Plaintiffs relied on the representation; and (6) Plaintiffs were damaged as a result of their reliance."

The trial court then made detailed findings of fact as follows:

> "This Court finds that Mr. Frazier promised the Millers that operation of WL Frazier would benefit J&W. WL Frazier was formed and obtained minority status when J&W was not able to. This allowed WL Frazier to obtain trucking contracts that were exclusively offered to minority businesses. Mr. Frazier may not have offered a percentage of partnership interest to the Millers, but he did promise that J&W and WL Frazier would work together to produce income for both businesses and that the Millers would have an interest in the profits generated by WL Frazier.

3

The Millers were not given actual stock in WL Frazier in order to allow WL Frazier to operate as a minority company. Mr. Frazier knew when he told the Millers that they would have an interest in WL Frazier profits and that the businesses would be ran together for profit that this was not true. Mr. Frazier has stated that he never intended on giving the Millers an interest in WL Frazier and that he started the business to protect his own personal assets.

Mr. Frazier knew that if he guaranteed the Millers a part of WL Frazier profits that they would rely on his representation. Mr. Frazier was in need of start up capital and operating expenses. Mr. Miller loaned Mr. Frazier the start up funds, made charges to their own personal credit cards to pay J&W debts, and never received profits from WL Frazier. Plaintiffs were damaged as a result of their reliance because currently $41,490.00 remains due on the loan from Mr. Miller for start up expenses and personal credit card debt totals $39,011.00 used to support J&W while it was not receiving profits. The total in credit card debt is made up of: $14,872.00 to Advanta, $12,232.00 to Chase, and $11,907.00 to the Millers for payments that were made to keep these accounts current.

. . . Plaintiffs were promised that the profits from WL Frazier would be used to benefit J&W and the Millers. Once WL Frazier was formed and Mr. Frazier was made controlling partner in J&W, J&W trucks were being used to the benefit of WL Frazier without compensation to Plaintiffs. Plaintiffs were entitled to repayment of the $41,490.00 due to Mr. Miller for start up costs and $39,011.00 for the credit card debt assumed to cover J&W expenses despite Mr. Frazier's promise that the businesses would work together for profit. This money would not have been provided had it not been for reliance on Mr. Frazier's promise that profits would be shared between both businesses."

In regard to this count, the Court of Appeals in its unpublished opinion issued on June 1, 2010, stated:

"Defendant next allege that the trial court erred in finding that they committed fraud.[6]

To establish actionable fraud, a plaintiff must show that (1) the defendant made a material representation; (2) the representation was false; (3) the defendant knew the representation was false or recklessly made the representation without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff suffered injury. *Johnson v. Wausau Ins Co*, 283 Mich. App. 636, 643; 769 NW2d 755 (2009).

As to the first element, there was evidence that defendant made a material representation - that J&W and Frazier Trucking would be run together for their

---

[6] At oral argument, defendant agreed that the trial court could have properly assessed these amounts under a different theory. Thus, the dispute is not as to amounts awarded, but as to legal theory.

4

mutual benefit and that Plaintiffs would have an interest in Frazier Trucking. Although defendant asserts that these statements were never made, this was a credibility determination to be made by the trial court, which held, "The court specifically finds that the credibility of Mrs. Miller far exceeds that of Mr. Frazier." Accordingly, we give special regard to the trial court's determination that Wayne lacked credibility, MCR 2.613(C), and conclude that Wayne did, in fact, make these representations.

There is also evidence of the second element, that the representation was false, because the companies were never run together for their mutual benefit and Wayne testified that he never intended Plaintiffs to have an interest in Frazier Trucking. Given defendant's actions, the evidence permits an inference that Wayne made these statements knowing that they were not true, thereby meeting the third element. Defendant clearly intended Plaintiffs to act based on the representations, as Frazier Trucking was in need of start up capital and operating expenses and needed Plaintiffs to continue to float J&W expenses, thereby evidencing the fourth element. Plaintiffs did, in fact, rely on the representations, as the Millers both testified, by loaning money to Frazier Trucking and paying J&W debts with their own personal funds in the belief that Frazier Trucking would be run in a manner beneficial to J&W, and ultimately suffered financial injury when defendant failed to repay the promissory note to Howard and refused to make payments toward the J&W debt accrued on the Millers' personal credit cards. Thus, all six elements of actionable fraud were met."

The Court of Appeals analyzed each element, then concluded that:

"Defendants assert that these were simply mere promises, which cannot form the basis of a fraud claim. Although the trial court used language indicating promises were made, it also used language indicating that guarantees and assertions of fact were made. Thus, Wayne did not simply make a promise to Plaintiffs. Rather, he stated, as a positive assertion, that Frazier Trucking profits would benefit J&W and that by running the two companies together, everyone would benefit from his minority status. Furthermore, the past or existing fact on which the promise was made was that J&W trucks were being used to create Frazier Trucking profits. Thus, Wayne's representation that the Frazier Trucking profits would benefit J&W was based on a past or existing fact and was sufficient to support a fraud claim. See *Michaels v. Amway Corp*, 206 Mich. App. 644, 652; 522 NW2d 703 (1194). We find no error."

•     Count III - Breach of Fiduciary Duty:

Plaintiffs alleged breaches of fiduciary duties under common law and Michigan Complied Laws § 450.4515, which provides for a statutory claim of breach of fiduciary duty for improper

5

conduct by managers or members of an limited liability company. The trial court determined that Plaintiffs and J&W alleged the existence of a common law duty by Defendant, but their argument and relief they sought was predicated on a theory that Defendant breached his statutory fiduciary duty. The trial court determined that Defendant's fraudulent misrepresentations caused him to breach his statutory fiduciary duties as a controlling member of an LLC. The trial court found that Defendant's breach was significant enough to warrant the dissolution of J&W and the liquidation of its asserts. The trial court concluded that the proceeds held in trust by the selling of ten of the twelve trucks owned by J&W "are to be distributed to J&W and [T]ruck 4234 is to be sold. The funds from the liquidation are to be distributed pursuant to the terms of the operating agreement."

- Count IV - Unjust Enrichment:

Plaintiffs and J&W alleged that Defendant was unjustly enriched by his use of J&W property, which generated income to his company, WL Frazier, without providing compensation to them. No written contracts existed between Plaintiffs, J&W and WL Frazier. Plaintiffs and J&W sought the allocation of lost profits by J&W as a basis to support their unjust enrichment claim. The trial court found that Defendant and WL Frazier were unjustly enriched based on three categories: (1) $57,737.00 was awarded to Plaintiffs based on lost profits due to the use of J&W trucks by Defendant and WL Frazier; (2) $22,296.00 was awarded to J&W for monies loaned by J&W to WL Frazier, which loan remained unpaid; and (3) $43,147.00 was awarded to Plaintiffs for the remaining balance due on a promissory note from Defendant to J&W to reimburse Plaintiffs for the home equity line they paid off.

- Count V - Conversion:

6

This count was premised on common law and statutory conversion. With regard to the common law conversion claim, the trial court determined that because the truck proceeds held in trust were already awarded to J&W pursuant to the statutory breach of fiduciary claim, "there is no need to award J&W that amount under this claim." The trial court further declined to award J&W exemplary damages because J&W "is a corporation" and "cannot suffer an injury to its feelings" to "render exemplary damages justifiable."

As far as the statutory conversion claim, the trial court determined that J&W established that Defendant and WL Frazier retained J&W property "without its consent" despite their "obligation to return the trucks. Based on Michigan Complied Laws § 600.2919(1)(a) and (2), the trial court concluded that J&W was also entitled to costs and reasonable attorney fees subject to a bill of costs to be submitted by J&W.

The trial court awarded Plaintiffs and J&W total damages of $269,682.04 less escrow funds of $61,013.00 for a net judgment amount of $208,669.64. The total damages amount awarded by the state court is an aggregation of the separate damages amounts awarded under each count of Plaintiffs' six count state court civil complaint. An assumption is made that the $48,391.65 in attorneys' fees awarded by the state court in its December 31, 2008, order is rooted in the damages awarded under the statutory conversion count. Defendant's answer to Plaintiffs' summary judgment motion validates this assumption.

On January 8, 2009, Defendant sought relief under Chapter 13 of the Bankruptcy Code. On March 4, 2009, the automatic stay was modified to allow the appeal of the state court's decision to proceed. Plaintiffs timely filed this adversary proceeding against Defendant seeking a non-dischargeability of debt determination.

7

Jurisdiction

The Court has jurisdiction to resolve the issues before it under 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1) and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), determinations as to the dischargeability of particular debts.

Applicable Law

A.  *Summary Judgment*

Fed. R. Civ. P. 56(c) for summary judgment is incorporated into Fed. R. Bankr. P. 7056. Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L.Ed.2d. 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 247-48. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (citations omitted).

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." *Kalamazoo River Study Group v. Rockwell International Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." *Id*. (citing *Anderson*, 477 U.S. at 248). "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any

8

significant probative evidence to support" its position. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (citing *Anderson*, 447 U.S. at 256). "If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (internal quotation marks and citations omitted).

B.    *Collateral Estoppel*

Collateral estoppel applies in bankruptcy dischargeability actions. *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L.Ed.2d 755 (1991). A party bears the burden of proving that collateral estoppel is applicable in a dischargeability action by a preponderance of the evidence standard. *Id*. at 291.

A bankruptcy court must make its own determination regarding the dischargeability of the debt, but that determination may be governed by factual issues that were actually and necessarily decided by a state court. *Vogel v. Kalita (In re Kalita)*, 202 B.R. 889, 894 (Bankr. W.D. Mich. 1996) (citing *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991)). As reaffirmed by the United States Supreme Court in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293, 125 S. Ct. 1517, 161 L.Ed.2d 454 (2005), the "Full Faith and Credit Act . . . requires the federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" (other citations omitted).

In this adversary proceeding, the findings of fact and determinations made in the state court opinion, which decision was affirmed on appeal, were rendered by a Michigan state court.

In Michigan, for collateral estoppel to apply three elements must be satisfied: (1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and

9

final judgment'; (2) 'the same parties must have had a full and fair opportunity to litigate the issue;' and (3) 'there must be mutuality of estoppel.'" *Gilbert v. Ferry*, 413 F.3d 578, 580-81 (6th Cir. 2005) (quoting *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 681, 677 N.W.2d 843, 844-45 (2004) (quoting *Storey v. Meijer, Inc.,* 431 Mich. 368, 373 n.3, 429 N.W.2d 169, 172 (1988))); see also *People v. Gates*, 434 Mich. 146, 154-55, 452 N.W.2d 627, 630 (1990) (explaining that "collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was (1) actually litigated, and (2) necessarily determined.")

1. Actually Litigated

Collateral estoppel conclusively bars only issues 'actually litigated' in the first action. "A question [of fact] has not been actually litigated until put into issue by the pleadings, submitted to the trier of fact for a determination, and thereafter determined." *VanDeventer v. Michigan Nat'l Bank*, 172 Mich. App. 456, 463, 432 N.W.2d 338, 341 (1988).

2. Necessarily Determined

Under Michigan law, "[a]n issue is necessarily determined only if it is 'essential' to the judgment. . . . Collateral estoppel applies only where the basis of the prior judgment can be ascertained clearly, definitely, and unequivocally." *People v. Gates*, 434 Mich. at 158, 452 N.W.2d at 631 (citation omitted). "For collateral estoppel to apply, the issues must be identical, and not merely similar." *Horn v. Department of Corrections*, 216 Mich. App. 58, 62, 548 N.W.2d 660, 662 (1996) (internal quotation marks and citation omitted).

By preventing relitigation, the doctrine of collateral estoppel attempts "to relieve parties of multiple litigation, conserve judicial resources, and, by preventing inconsistent decisions, encourage

reliance on adjudication." *Dearborn Heights School Dist. No. 7 v. Wayne Co. MEA/NEA*, 233 Mich. App. 120, 124, 592 N.W.2d 408, 441 (1998).

Discussion

A.  *Non-Dischargeability of a Debt under 11 U.S.C. 523(a)(4)*

In their motion and brief, Plaintiffs provide the Court with the applicable and relevant authority to apply collateral estoppel principles under Michigan law. The application of those principles, however, precludes summary judgment by this Court. Specifically, the only collateral estoppel element that is satisfied is limited to the fact that Plaintiffs and Defendant are the same parties in this second proceeding and the first proceeding (i.e., the state court civil action). Certain questions of fact exist in Plaintiffs' § 523(a)(4) claim that were not actually litigated or necessarily determined. In particular, Defendant did not have a full and fair opportunity to litigate the § 523(a)(4) claim in the prior state court civil action.

To explain, Section 523(a)(4) excepts from discharge three categories of debt: "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." In the Sixth Circuit, for a debt to fall within the category of a debt for fraud or defalcation while acting in a fiduciary capacity an express or technical trust must exist. The Sixth Circuit Court of Appeals in *In re Bucci*, 493 F.3d 635 (6th Cir. 2007), explained the meaning of the phrase "defalcation while acting in a fiduciary capacity" by quoting from several prior decisions. As stated in *Bucci*:

> A debt is nondischargeable as a defalcation when the preponderance of the evidence establishes: "(1) a preexisting fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *In re Blaszak,* 397 F.3d at 390.
>
> The Sixth Circuit "construes the term 'fiduciary capacity' found in the defalcation provision of § 523(a)(4) more narrowly than the term is used in other circumstances." *In re Blaszak,* 397 F.3d at 391. In *Carlisle Cashway, Inc. v Johnson*

11

(*In re Johnson*), 691 F.2d 249, 251-52 (6th Cir.1982), and *In re Interstate Agency*, 760 F.2d at 125, we limited the application of the defalcation provision to express or technical trusts and refused to extend it to constructive or implied trusts imposed by operation of law as a matter of equity. The decisions in those cases relied on the Supreme Court's holding in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct.151, 153, 79 L.Ed. 393 (1934) that the defalcation provision applies only to express or technical trusts. Again in *In re Garver*, we adopted a narrow definition of the defalcation provision and held that it does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship. *In re Garver*, 116 F.3d at 179. . . . Accordingly, the defalcation provision applies to "only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *In re Garver,* 116 F.3d at 180.

> To establish the existence of an express or technical trust, a creditor must demonstrate: "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." (citation omitted)

*Bucci*, 493 F.3d at 639-40.

The findings of fact stated in the state court opinion are insufficient and fail to meet the "fraud or defalcation while acting in a fiduciary capacity" standard of § 523(a)(4) as defined by the Sixth Circuit Court of Appeals. The findings of fact contained in the state court opinion specifically indicate that the breach of fiduciary duty claim at issue in Count III of Plaintiffs' state court complaint is grounded in common law and statutory fiduciary duties. These forms of common law or statutory fiduciary duties do not involve an express or technical trust relationship that arises from the placement of specific res placed in Defendant's hands by Plaintiffs. As stated by the state court in its opinion, under Michigan common law, "a fiduciary relationship exists when there is a reposing of faith, confidence, and trust and the placing of reliance upon the judgment and advice of another." (Plfs' Compl. Ex. 1 at 10) (citing *Smith v. Saginaw Sav. & Loan Ass'n*, 94 Mich. App. 263, 274, 288 N.W.2d 613, 618 (1979)). In addition, the state court opinion cited to Michigan Compiled Laws § 440.4515, which provides for members of a limited liability company to bring a statutory breach of a fiduciary duty claim against a controlling member or manager of an LLC for his improper

12

conduct.

Moreover, neither the embezzlement or larceny categories excepted from discharge under Section 523(a)(4) were actually litigated or necessarily determined in the state court civil action as between Plaintiffs and Defendant.

The embezzlement category under § 523(a)(4) has been explained by the Sixth Circuit Court of Appeals as follows –

> Federal law defines 'embezzlement' under § 523(a)(4) as the 'fraudulent appropriation of property by a person whom such property has been entrusted or into whose hands it has lawfully come.' A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for use other than that for which it was entrusted, and the circumstances indicate fraud.

*Brady v. McAllister* (*In re Brady*), 101 F.3d 1165, 1172-73 (6th Cir. 1996). "The fraud required under § 523(a)(4) is fraud in fact, involving moral turpitude or *intentional* wrong." *Cash Am. Fin. Servs., Inc. v. Fox* (*In re Fox*), 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007) (internal and other citations omitted) (emphasis in original). A "debtor's fraudulent intent may be shown by circumstantial evidence." *Id*. Circumstantial evidence may be used to negate a debtor's fraudulent intent by showing "that the debtor used [the creditor's property] openly, without attempt to conceal, and had reasonable grounds to believe he had the right to so use." *Id*. (quoting *In re Weber*, 892 F.2d 534, 539 (7th Cir. 1989)).

As explained by the court in *In re Noblit*, 327 B.R. 307, 311 (Bankr. E.D. Mich. 2005):

larceny differs from embezzlement because larceny requires that the original taking must have been unlawful, and is defined as 'the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner.'

13

The conversion claims in the state court action closely mirror and could fit within the embezzlement and larceny categories under Section 523(a)(4). Yet, a problem exists with one element: the property that was subject to these conversion claims — i.e, the trucks — belonged to J&W and not to Plaintiffs. Currently, the record is not sufficient to fill this deficiency.

B. *Non-Dischargeability of a Debt under 11 U.S.C. 523(a)(6)*

Like their Section 523(a)(4) claim, Plaintiffs argue the state court opinion establishes a non-dischargeable debt under § 523(a)(6).

For this claim, relevant elements of non-dischargeability under Section 523(a)(6) are: (i) a desire or interest to cause the consequences of the act or belief that the consequences are substantially certain to result; and (ii) no just cause or excuse. *Kennedy v. Mustaine (In re Kennedy)*, 249 F.3d 576, 580 (6th Cir. 2001) (citations omitted).

Contrary to Plaintiffs' position, the only collateral estoppel element established is that Plaintiffs and Defendant are the same parties in the first proceeding (the state court civil action) and now this second proceeding. The flaw in Plaintiffs' Section 523(a)(6) claim is that the state court opinion did not result in a final judgment on whether the willful and malicious injury standard under Section 523(a)(6) was actually litigated and necessarily determined. Plaintiffs rely on one line that appears in the state court opinion which found that Defendant's conduct "is so willful and wanton that it demonstrates a reckless disregard for the rights of Plaintiffs." This finding was made by the state court in relation to the common law conversion claim. Again, the state court was not required to determine and did not determine whether Defendant willfully and maliciously intended to injure Plaintiffs or their property. As a result, genuine issues of material fact remain as to whether Defendant caused a willful and malicious injury to Plaintiffs or their property and intended to do so.

14

The Court therefore denies Plaintiffs' motion for summary judgment on their Section 523(a)(6) claim.

C. *Non-Dischargeability of a Debt Under 11 U.S.C. § 523(a)(2)*

Plaintiffs' motion and brief refer to Section 523(a)(2)(A) and conclude that collateral estoppel applies. Plaintiffs rely on *Cohen v. De La Cruz*, 523 U.S. 213, 118 S. Ct. 1212, 140 L.Ed.2d 341 (1998), for the proposition that fraud based state court judgments must be given collateral estoppel effect. Defendant's counter that the *Cohen* decision only held that treble damages flowing from a state court fraud judgment were non-dischargeable.

The Section 523(a)(2)(A) count alleges the trial court opinion establishes that the debt owed by Defendant falls under this section. To prevail on a claim under Section 523(a)(2)(A), a plaintiff must show that:

> (1) [T]he debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth; (2) the debtor intended to deceive; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 280 (6th Cir. 1998). The elements for fraud under Michigan law are as cited by the Court of Appeals:

> (1) that [the defendant] made a material misrepresentation, (2) that it was false, (3) that [the defendant] knew it was false or made the promise recklessly without knowledge of its truth or falsity, (4) that [the defendant] made the promise with the intent that plaintiff would act on it, (5) that plaintiff acted in reliance, and (6) that plaintiff suffered damage.

*Phinney v. Perlmutter*, 222 Mich. App. 513, 525-27, 564 N.W.2d 532, 543 (1997). It is well-established that "the elements of a dischargeability case under 11 U.S.C. § 523(a)(2)(A) for false misrepresentation and fraud are virtually identical to the elements that Michigan requires to establish fraudulent misrepresentation. Thus, a state court judgment based upon fraud

15

necessarily encompasses a finding of all the elements of Section 523(a)(2)(A) and is entitled to collateral estoppel effect in a subsequent bankruptcy court action." *Robinson v. Callender (In re Callender)*, 212 B.R. 276, 281 (Bankr. W.D. Mich. 1997); *see also Livingston v. Transnation Title Ins., Co. (In re Livingston)*, 372 F.App'x 613, 618-19 (6th Cir. 2010); *In re Waldorf*, 206 B.R. 858, 863-64 (Bankr. E.D. Mich. 1997). The state court opinion detailed all elements of Section 523(a)(2)(A) as required by *Rembert*. This finding was affirmed on appeal. Here, the state court's finding on the fraud claims does collaterally estop Defendant from re-litigating the issue here.

The state court found that Defendant made material misrepresentations that Defendant's company would benefit Plaintiffs and that Plaintiffs would have an interest in Defendant's business which Defendant knew were false. The state court also found that Defendant intended to deceive Plaintiffs because he intended to only run his business to protect himself and his assets. Another misrepresentation was made by Defendant to Plaintiffs as to a guarantee of profits which likewise was made with an intent of Defendant to deceive Plaintiffs. Plaintiffs justifiably relied on these misrepresentations and were damaged as a result.

A review of the whole record does not permit a finding for Defendant given the case law holding that a finding of fraud under Michigan law suffices to find nondischargeability under Section 523(a)(2)(A). As to damages, this finding applies to the $80,501 in damages for the state court fraud count. The other amounts included in the aggregate state court judgment still have factual issues to be resolved under Section 523(a)(4) or (a)(6). The Court has reviewed the record of the Michigan Court of Appeals' oral argument and cannot find a sufficient basis to hold that Defendant's counsel made the requisite admissions to warrant a finding that the entire

16

amount of damages sought by Plaintiffs could be recovered under a fraud theory. Reference to footnote 6 of the Michigan Court of Appeals' decision does not in and of itself support an imposition of all damages in favor of Plaintiffs and against Defendant, especially when a full and complete reading of the Michigan Court of Appeals' Opinion delineates different damages recoverable under various legal theories. Moreover, the structure of the trial court's and Michigan Court of Appeals' Opinion, which carefully analyzed damages under various theories, compels this Court to conclude that both courts considered damages to be specific and unique for each legal theory. Otherwise, either court could have reduced the length of its Opinion by merely addressing one theory, award the full amount of damages to Plaintiffs, and then either summarily find liability on the other legal theories or decline to address any other theories. Since both courts took great pains to delineate each theory of liability and the damages awarded under each theory, this Court will acknowledge and respect those decisions and conclude that the reference in footnote 6 does not have the legal effect as urged by Plaintiffs. Thus, the Court grants partial summary judgment to Plaintiffs on Count III for $80,501, but denies summary judgment as to Counts I and II.

Counsel for Plaintiffs is requested to prepare an Order consistent with this Opinion and present same after approval of Defendant's counsel or in compliance with the applicable Court rule.

**Signed on September 29, 2011**

                                             **/s/ Daniel S. Opperman**
                                             **Daniel S. Opperman**
                                             **United States Bankruptcy Judge**